UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Cassandra Lee Carr**

      **v.**

Case No. 14-cv-437-PB
Opinion No. 2015 DNH 223

**Carolyn W. Colvin,**
**Acting Commissioner,**
**U.S. Social Security**
**Administration**

**MEMORANDUM AND ORDER**

Cassandra Lee Carr challenges the Social Security Administration's denial of her claims for disability insurance benefits ("DIB") and supplemental Social Security income ("SSI"). The Social Security Commissioner, in turn, seeks to have the ruling affirmed.

**I.    BACKGROUND**

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 10). See LR 9.1.  Because that joint statement is part of the court's record, I need not recount it here.  I discuss facts relevant to the disposition of this matter as necessary below.

## II.  <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), I have the authority to review the pleadings submitted by the parties and the administrative record, and to enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence.  Id.  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion."  Id. at 770.  Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st

Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III.  ANALYSIS

Carr filed an application for DIB and SSI in August 2012, alleging disability as of January 31, 2011.  Tr. at 165-82. After her claims were initially denied, a hearing was held before an ALJ in May 2013.[1]  Tr. at 36-82 (hearing transcript). The ALJ issued a written decision in June 2013 concluding that Carr was not disabled.  Tr. at 16-35.  In his decision, the ALJ concluded at step one that Carr had not engaged in substantial gainful activity since January 31, 2011, the alleged onset date. Tr. at 21.  At step two, the ALJ determined that Carr had severe impairments of depression, panic disorder, and reading disorder. Tr. at 21-22.  At step three, the ALJ decided that Carr's impairments did not meet or equal any of the listed impairments, specifically considering and rejecting listing 12.05.  Tr. at

---

[1] In the parties' joint statement of material facts, they state that the hearing took place on December 10, 2010.  Doc. No. 10 at 1.  According to the record, as cited by the parties, however, the hearing occurred on May 29, 2013.  Tr. at 36.

3

22-24.  The ALJ finally found at step five that Carr had the residual functional capacity to perform work in the national economy.  Tr. at 24-29.  The ALJ therefore concluded that Carr was not disabled.  Tr. at 30.

In August 2014, the Appeals Council notified Carr that it had denied her request to review the ALJ's decision.  Tr. at 1-6.  As such, the ALJ's decision constitutes the Commissioner's final decision, and this matter is now ripe for judicial review.

Carr argues that a remand is required for two reasons: (1) the ALJ erred in concluding that Carr did not meet or equal listing 12.05(C), and (2) the ALJ's assessment of Carr's residual functional capacity is not supported by substantial evidence.  Doc. No. 8-1.  I address each argument in turn.

## A.   Listing 12.05(C)

Carr first challenges the ALJ's conclusion that Carr did not meet or equal listing 12.05(C).  See id. at 4-13.  For the reasons set out below, I reject Carr's argument.

20 C.F.R. § 404.1520(a)(4)(iii) provides that, at step three of the five-part evaluation process, the ALJ must consider the severity of a claimant's impairments to determine whether those impairments meet or equal one of the listings set out in appendix 1 of 20 C.F.R. § 404.  Each listing then specifies the "objective medical and other findings needed to satisfy the

4

criteria of that listing." 20 C.F.R. § 404.1525(c)(3).  In
order to meet a listing's requirements, the impairment(s) must
"satisf[y] all of the criteria of that listing, including any
relevant criteria in the introduction . . . ."  Id.

Thus, to meet listing 12.05(C), a claimant's impairments
must satisfy (1) the requirements set out in listing 12.05's
introductory paragraph, and (2) subparagraph 12.05(C)'s
particular criteria. Libby v. Astrue, 473 Fed. Appx. 8, 8-9
(1st Cir. 2012); Stanley v. Colvin, 2014 WL 1281451, at *16 (D.
Mass. March 28, 2014).  Listing 12.05's introductory paragraph
provides that a claimant must suffer "deficits in adaptive
functioning [that] initially manifested . . . before age 22."
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Subparagraph
12.05(C) further requires that the claimant demonstrate "[a]
valid verbal, performance, or full scale IQ of 60 through 70,"
and "a physical or other mental impairment imposing an
additional and significant work-related limitation of function."
Id. at 12.05(C).  The absence of one or more of these
requirements means that the claimant's impairments do not meet
listing 12.05(C).  See Libby, 473 Fed. Appx. at 9.  The claimant
bears the burden of proving that her impairments meet or equal
the listing.  See Dudley v. Sec'y Health & Human Servs., 816
F.2d 792, 793 (1st Cir. 1987).

5

Here, the sole disputed issue is whether the ALJ's finding that Carr lacked the necessary deficits in adaptive functioning, as required by listing 12.05's introductory paragraph, is supported by substantial evidence.[2]  See Tr. at 23.  20 C.F.R. § 404, Subpt. P, App. 1, 12.00(C)(1) provides examples of "adaptive activities," which include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office," and explains that these activities are assessed "by their independence, appropriateness, effectiveness, and sustainability."  See Stanley, 2014 WL 1281451, at *16.  To evaluate whether a claimant suffers "adaptive deficits," then, the ALJ must "determine the extent to which [the claimant is]

---

[2] In her motion, the Commissioner concedes that the ALJ erred by rejecting Carr's assessed full scale IQ score of 69.  See Doc. No. 9-1 at 3-4.  The Commissioner further admits that the ALJ's finding that Carr had severe depression, panic disorder, and reading disorder meets listing 12.05(C)'s requirement that Carr suffer "a physical or other mental impairment imposing an additional and significant work-related limitation . . . ."  Id. at 4.  The Commissioner thus concedes that Carr met the requirements set out in subparagraph 12.05(C).  See id.  The Commissioner nonetheless argues that I should affirm the ALJ because the ALJ properly concluded that Carr lacked the adaptive deficits required by listing 12.05's introductory paragraph. Id.  Carr apparently agrees that, for her impairments to meet listing 12.05(C), she must suffer adaptive deficits.  See Doc. No. 8-1 at 7-12 (arguing that Carr did, in fact, suffer adaptive deficits).

6

capable of initiating and participating in activities
independent of supervision or direction."  20 C.F.R. § 404,
Subpt. P, App. 1, 12.00(C)(1).

In this case, substantial evidence supports the ALJ's
determination that Carr did not suffer the requisite adaptive
deficits.  In addressing Carr's adaptive functioning, the ALJ
noted that Carr has a driver's license, drives to medical
appointments and to visit family, and performs household tasks
for her elderly grandmother.  Tr. at 23; 240-42.  The ALJ
further noted that Carr has been living independently since age
sixteen, and can adequately and independently perform self-care
and grooming activities, prepare meals, shop in some stores, and
manage money.  Tr. at 22-23; 50-51 (when asked whether she
needed help to pay bills and complete similar tasks when living
alone, Carr responded that she "pretty much did it myself"); 241
(Carr stating that "[e]very day I make my own meals"); 341.  The
ALJ further noted that the medical evidence suggested that Carr
did not require support or training in self-management skills.
Tr. at 22; see, e.g., Tr. at 341 (Dr. Thomas Burns concluding
that "Carr is able to handle all her self care needs
effectively. She is able to perform household tasks, manage her
daily activities, and complete most routine financial
interactions effectively.").  Thus, there is substantial record

evidence to support the ALJ's determination that Carr lacked the requisite adaptive deficits.

Carr contends, however, that the ALJ erred by allegedly failing to "look further into [Carr's] independence or effectiveness" in performing the above-described activities. Doc. No. 8-1 at 8. Relying largely upon her own testimony, Carr notes that she often depends upon her boyfriend and family; is nervous taking medication alone; drives only short distances; left school after eighth grade and was unable to complete her GED; sometimes struggles to make correct change; and is anxious in many social situations. Id. at 8-12. Therefore, she argues, she cannot complete adaptive tasks "independently" or "effectively," and thus has the necessary functional deficits.

This argument is unpersuasive for two reasons. First, ample medical and testimonial evidence contradicts Carr's suggestion that she cannot perform these adaptive tasks independently or effectively. See, e.g., Tr. at 50-51; 341. Second, and more fundamentally, the fact that Carr has identified materials that could support a different conclusion does not warrant reversing the ALJ's decision where, as here, the ALJ based his conclusion on substantial evidence. Instead, "a court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the record could arguably justify

8

a different result." Young v. Astrue, 2011 DNH 130, 23 n.18;
see Irlanda Ortiz, 955 F.2d at 770.  I therefore reject Carr's
argument that the ALJ erred in concluding that Carr did not meet
or equal listing 12.05(C), and instead affirm the ALJ's
determination.  See Libby v. Astrue, 2011 WL 2940738, at *12 (D.
Me. July 11, 2011) aff'd Libby v. Astrue, 473 Fed. Appx. 8 (1st
Cir. 2012) (affirming the ALJ's decision that the claimant
failed to meet listing 12.05(C) under facts similar to those
presented here); see also Arce v. Barnhart, 185 Fed. Appx. 437,
438-39 (5th Cir. 2006); Geier v. Astrue, 2008 WL 553611, at *4
(N.D. Fla. Feb. 28, 2008).

B.   **Carr's Residual Functional Capacity**

     Carr next contends that the ALJ erred in assessing Carr's
residual functional capacity.  A claimant's residual functional
capacity, or "RFC," is "the most [the claimant] can still do
despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1),
416.945(a)(1).  The ALJ must assess a claimant's RFC "based on
all of the relevant medical and other evidence." See 20 C.F.R.
§§ 404.1545(a)(3), 416.945(a)(3).  On appeal, I review whether
the assigned RFC is supported by substantial evidence. Irlanda
Ortiz, 955 F.2d at 769.

     In this case, the ALJ found that Carr had the RFC "to
perform medium work as defined in 20 CFR 404.1567(c) and

416.967(c) except she is limited to occasionally balancing, [stooping], kneeling, crouching, and crawling; she must avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights; work is limited to 1 to 2 step tasks with no detailed instructions; lastly, she is limited to only occasional interaction with the public." Tr. at 24-25. Here, Carr argues that the assigned limitation on social interaction – "only occasional interaction with the public" - is not supported by substantial evidence. Carr specifically asserts that medical experts unanimously called for limiting Carr to only occasional interaction with "others," including co-workers, and not merely "the public." Doc. No. 8-1 at 13. She contends, therefore, that the ALJ erred by allegedly substituting his own lay views for uncontroverted medical opinion. Below, I review the medical and other evidence relevant to Carr's assessed limitation, and ultimately conclude that the ALJ erred in assigning Carr's RFC.

    1.  <u>Dr. Burns</u>

Carr underwent a psychological examination with consultative examiner Thomas Burns, Ph.D., in October 2012. Tr. at 339-43. Upon mental status examination, Dr. Burns reported that Carr "seemed slightly anxious," but that her speech was "clear, logical, [and] appropriate," her thoughts "seemed logical, and focused on the business at hand," and her

"[i]ntelligence seemed in the average range." Tr. at 340. Carr reportedly told Dr. Burns that she knew her "neighbors and the landlord and gets along well with everybody." Id. Dr. Burns opined that Carr "appears to have good social skills" and "seems able to interact with very small numbers of people effectively." Tr. at 341. Dr. Burns further noted, however, that Carr "reports considerable discomfort and anxiety when she is in situations where there are more than perhaps 10 people" and "becomes very anxious and flees" circumstances in which "she has to deal with more than a very few people or with social conflict." Tr. at 341-42. Dr. Burns thus stated that, "[a]s long as she is essentially working alone, [Carr] appears to do reasonably well." Tr. at 342. Dr. Burns then concluded that, although Carr's anxiety has caused her to withdraw from vocational situations, her "disorder would seem treatable." Tr. at 343.

In assigning Carr's RFC, the ALJ reportedly considered Dr. Burns' opinions and findings, but gave them "only some weight." Tr. at 26. With respect to social limitations in particular, the ALJ stated that he found Dr. Burns' assessments "that [Carr] should be limited to work where she is essentially working alone, not supported by the medical evidence of record." Tr. at 26. To bolster this conclusion, the ALJ cited Carr's "own

11

reports that she is able to adequately interact with smaller
groups and [her] prior work history which shows that she has
been able to interact with co-workers."  Tr. at 26-27.  The ALJ
therefore decided that any further limitation on Carr's
interaction was unnecessary and "simply not supported by the
medical evidence of record."  Tr. at 26-27.

    2.   <u>Dr. Stenslie</u>

In October 2012, state psychologist Craig Stenslie, Ph.D.,
reviewed the record, including Dr. Burns' findings and opinions.
<u>See</u> Tr. at 83-102.  Upon his review, Dr. Stenslie opined that
Carr "is able to deal adequately with all instructions, maintain
attention for extended periods, sustain an ordinary routine,
complete a normal work day and week, and cope with stress and
change."  Tr. at 89-90, 99-100.  Dr. Stenslie concluded,
however, that Carr "is able to work in coordination with others
only if such work is a minimal part of her job description."
Tr. at 90, 100.

In assigning Carr's RFC, the ALJ considered Dr. Stenslie's
opinions, "but . . . granted them only some weight."  Tr. at 28.
With respect to Carr's social limitations, the ALJ found that
Carr's "ability to interact appropriately with medical providers
and consultative examiners and her ability to interact in small
social settings also demonstrates that [she] is not

significantly precluded from all social interaction in a work
setting." Tr. at 28. The ALJ further stated that Carr's "prior
work history shows that she was able to interact with co-workers
with little to no difficulty." Tr. at 28. The ALJ therefore
concluded that, although Carr should be limited to only
occasional interaction with the public, "any additional social
restrictions would be inconsistent with the medical evidence of
record, [Carr's] activities of daily living, and her overall
social functioning." Tr. at 28.

     3.  <u>Dr. Wagner</u>

Lastly, in May 2013, Carr underwent a psychological
evaluation with clinical psychologist Jeffrey Wagner, Ph.D., at
her attorney's suggestion. <u>See</u> Tr. at 495-504. When asked why
she was unable to work, Carr told Dr. Wagner that she became too
dizzy and anxious. Tr. at 495. Dr. Wagner diagnosed Carr with
mild mental retardation, major depression, panic disorder with
agoraphobia, social anxiety disorder, and generalized anxiety
disorder. Tr. at 503-04. He determined that Carr was unable to
meet competitive standards for a regular work setting in 24 of
25 mental abilities and aptitudes listed on a worksheet that he
completed. Tr. at 507-10. He noted that Carr "becomes anxious,
at times to the point of panic, when she is exposed to
unfamiliar people or possible evaluation or scrutiny." Tr. at

496.  He also extensively critiqued Dr. Burns' opinions, stating
that Dr. Burns underdiagnosed Carr's conditions and was overly
optimistic about Carr's prognosis.  Tr. at 501-02.  Dr. Wagner
concluded that Carr's various conditions "render gainful
employment impossible."  Tr. at 503.

The ALJ explained that he considered, but "assigned . . .
little weight" to, Dr. Wagner's evaluation in determining Carr's
RFC.  <u>See</u> Tr. at 27.  The ALJ did not, however, specifically
explain his treatment of Dr. Wagner's assessment with respect to
social limitations.[3]  <u>See</u> Tr. at 27; Doc. No. 8-1 at 15.

    4.  <u>Other Evidence</u>

In addition to the medical opinion evidence described
above, the ALJ considered the following materials in assigning
Carr's RFC.  The ALJ reviewed treatment notes from Carr's
primary care physician, Dr. Tyler Edwards.  Dr. Edwards' notes
indicated that Carr often failed to take medications prescribed
to treat her anxiety and depression.  Tr. at 26.  The notes
further indicated, according to the ALJ, that "physical
examinations [of Carr] have demonstrated no objective findings

---

[3] The Commissioner argues that "[t]he ALJ extensively discussed
the evidence in the record that he found inconsistent with such
severe social restrictions," and that "[i]t would have been
needlessly redundant for the ALJ to have repeated [this
evidence] in specifically rejecting Dr. Wagner's opinion."  Doc.
No. 9-1 at 11 n.3.

of psychiatric symptoms." Tr. at 26.  The ALJ also referred to Carr's work activity between 2005 and 2010, which the ALJ found "significant [in] that [Carr's] alleged impairments do not prevent her from working." Tr. at 28.  The ALJ further noted that Carr "did not demonstrate or manifest any anxiety or difficulty concentrating" during her hour-long hearing before the ALJ.  Id.  Finally, the ALJ pointed out that "no treating physician submitted medical source statements limiting [Carr's] ability to perform work activities."  Id.

In assessing a claimant's residual functional capacity, an ALJ may not "ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen, 172 F.3d at 35. As a lay person, an ALJ is "not qualified to interpret raw medical data in functional terms" in the absence of medical findings or opinions.  Id.; Frotten v. Colvin, 2014 DNH 194, 8. An ALJ does, however, have the authority to "piece together the relevant medical facts from the findings and opinions of multiple physicians," Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987), and may make "common-sense judgments about functional capacity based on medical findings," Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).

Here, the ALJ erred by rejecting all of the relevant medical opinions and instead basing Carr's RFC on his own view of the relevant evidence.  See Tr. at 26-29.  The three medical opinions provided that (1) Carr should be limited to work where she is "essentially working alone," Tr. at 26, 342; (2) Carr "is able to work in coordination with others only if such work is a minimal part of her job description," Tr. at 90, 100; and (3) Carr's various conditions "render gainful employment impossible," Tr. at 503.  The experts thus unanimously concluded that Carr should be limited to only occasional interaction with others, including co-workers.  The ALJ, however, assigned these opinions "only some" or "little" weight because, he concluded, Carr's reported ability to interact with others, her prior work experience, her failure to take prescribed medications, and her demeanor during an hour-long hearing undermined the experts' opinions.  Tr. at 25-29.  Based upon his interpretation of those factors, the ALJ declined to adopt the limitation recommended by the experts and instead limited Carr to "only occasional interaction with the public."  Tr. at 25.  Because the ALJ rejected the only relevant medical opinions and based Carr's social limitation on his own view of the record, Carr's assigned RFC is not supported by substantial evidence.

16

The Commissioner nonetheless makes three principal arguments in support of the Carr's assessed RFC. I address, and reject, each argument below. First, the Commissioner argues that the ALJ permissibly pieced together the relevant factual findings, opinions, and his own observations in assigning Carr's RFC. See Doc. No. 9-1 at 7. I disagree. Unquestionably, the ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians," Evangelista, 826 F.2d at 144, and may assign different weights to conflicting opinions, see Roman-Roman v. Comm'r of Soc. Sec., 114 Fed. Appx. 410, at *1 (1st Cir. 2004). Moreover, an ALJ may discount an opinion that is unsupported by, or inconsistent with, record evidence. See Couture v. Colvin, 2015 DNH 128, 11-14. Thus, the ALJ here did not err by assigning different weight to different opinions, or by considering those opinions in light of the record evidence. Rather, he erred by rejecting all of the expert opinions and instead assigning an RFC based on his own interpretation of the facts. See Nguyen, 172 F.3d at 35. By doing so, the ALJ overstepped his qualifications as a lay person.

Second, relying upon Martel v. U.S. Soc. Sec. Admin., 2013 DNH 157, the Commissioner appears to argue that the assigned social limitation here is a reasonable interpretation of the

experts' opinions.  Doc. No. 9-1 at 11.  This argument
misconstrues Martel.

In Martel, as in this case, the claimant challenged the
social limitation in his assigned RFC.  In Martel, one medical
expert opined that the claimant "is not able to interact
appropriately and communicate effectively with people he is
unfamiliar with," while another concluded that the claimant
"should avoid work with close contact with strangers."  2013 DNH
157, 36-37.  Based on those opinions, I affirmed the ALJ's
assigned social limitation of "no interaction with the general
public."  Id. at 35, 37.  In so concluding, I noted that the
experts' opinions were "open to interpretation," and that the
ALJ "properly drew reasonable inferences from the record
evidence in arriving at his decision to limit [the claimant] to
no interaction with the public."  Id. at 37.

Despite their obvious factual similarities, this case is
essentially different from Martel.  Martel rests on the
proposition that, where expert opinions are ambiguous, an ALJ
may reasonably interpret those opinions - based on record
evidence - in assigning an RFC.  See id.  Martel does not mean,
however, that when an ALJ disagrees with all of the relevant
expert opinions, he may simply scrap them and fashion an RFC
that he believes is more fitting.  See id.; see also Nguyen, 172

F.3d at 35.  And, in this case, the ALJ did not merely interpret ambiguous opinions, but explicitly rejected them.  See Tr. at 26 (finding that Dr. Burns' "assessments that [Carr] should be limited to work where she is essentially working alone, not supported by the medical evidence of record"), 27 (assigning Dr. Wagner's opinion "little weight," though not explicitly addressing social limitations), 28 (stating that Dr. Stenslie's proposed social limitation "would be inconsistent with the medical evidence of record, [Carr's] activities of daily living, and her overall social functioning").  Martel therefore does not save the ALJ's conclusion.

Finally, the Commissioner argues that a remand is unnecessary because, even if the ALJ had adopted Dr. Stenslie's opinion, that opinion would not prevent Carr from performing certain jobs.  Doc. No. 9-1 at 8 n.2; see Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (explaining that "a remand is not essential if it will amount to no more than an empty exercise").  More specifically, relying on the Dictionary of Occupational Titles, the Commissioner contends that "interaction with people [is] 'not significant' in the jobs the ALJ found [Carr] could perform."  Doc. No. 9-1 at 8 n.2.

A full and fair reading of the record forecloses the Commissioner's argument.  A vocational expert ("VE") testified

at Carr's hearing before the ALJ.  Tr. at 77-81.  At that
hearing, the ALJ asked the VE a series of hypothetical questions
regarding whether someone of approximately Carr's age,
education, and work experience could perform work in the
national economy.  The ALJ initially asked whether an individual
limited to "only occasional interaction with the public" could
perform jobs that exist in significant numbers.  Tr. at 77-78.
The VE opined that such jobs – "hand packager," "laundry
worker," "hospital cleaner" – did exist.  Tr. at 78.  The ALJ
then shifted the hypothetical, and asked whether a significant
number of jobs existed for someone limited to "only occasional
interaction with co-workers."  Tr. at 79 (emphasis added).  To
this, the VE replied that he "[didn't] know of any."  Tr. at 79.

The vocational expert thus opined that an RFC limiting Carr
to only occasional interaction with others, including co-
workers, would essentially bar her from performing jobs that
exist in significant numbers in the national economy.  The
Commissioner does not address this opinion in her argument, let
alone explain why I should disregard it here.  I decline to do
so.  See Roman-Roman, 114 Fed. Appx. 410, *1.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I grant in part and deny in part the Commissioner's motion to affirm (Doc. No. 9) and grant in part and deny in part Carr's motion to reverse (Doc. No. 8). Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this Memorandum and Order.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge
December 8, 2015

cc:  Laurie Smith Young, Esq.
     D. Lance Tillinghast, Esq.
     Robert Rabuck, Esq.